## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| **SURETY ADMINISTRATORS, INC.,** | : | |
| **645 Penn Street** | : | |
| **Reading, PA 19603,** | : | |
| **and** | : | |
| **HARCO NATIONAL INSURANCE COMPANY,** | : | |
| **702 Oberlin Road** | : | |
| **Raleigh, NC 27606,** | : | |
| **and** | : | **JURY TRIAL DEMANDED** |
| **CAPITAL BONDING CORPORATION,** | : | |
| **525 Penn Street** | : | |
| **Reading, PA 19601,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **Civil Action No.** |
| | : | |
| **SOUTHEAST BAIL BONDS, LLC,** | : | |
| **305 Maple Street** | : | |
| **Perth Amboy, NJ 08861,** | : | |
| **and** | : | |
| **MONTGOMERY R. CARLIN,** | : | |
| **116 Walter  Mire Road** | : | |
| **Ghent, NY 12075,** | : | |
| **and** | : | |
| **R. SCOTT HALL,** | : | |
| **1716 Cleveland Hwy, Suite 200** | : | |
| **Dalton, GA 30721,** | : | |
| **and** | : | |
| **DAVID E. SMITH,** | : | |
| **221 Lakewood Drive** | : | |
| **Dalton, GA 30721,** | : | |
| **and** | : | |
| **VINCENT J. SMITH,** | : | |
| **2239 Eisenhower Drive** | : | |
| **Reading, PA 19601** | : | |
| **and** | : | |
| **PACHO'S BAIL BONDS,** | : | |
| **7100 Van Nuys Boulevard, #215** | : | |
| **Van Nuys, CA 91405,** | : | |
| **and** | : | |
| **ELIZABETH MACPHERSON,** | : | |
| **7100 Van Nuys Boulevard, #215** | : | |
| **Van Nuys, CA 91405,** | : | |
| **and** | : | |

| | |
|---|---|
| **TRI-STATE BAIL BONDS,** | : |
| **305 Maple Street** | : |
| **Perth Amboy, NJ 08861,** | : |
| **and** | : |
| **DAVID R. MORGAN,** | : |
| **305 Maple Street** | : |
| **Perth Amboy, NJ 08861,** | : |
| | : |
| **Defendants.** | : |
| | : |

## COMPLAINT

Plaintiffs Harco National Insurance Company, Capital Bonding Corporation and Surety Administrators, Inc., by and through their undersigned counsel, state the following as their complaint against Defendants Southeast Bail Bonds, LLC, Montgomery R. Carlin, R. Scott Hall, David E. Smith, Vincent J. Smith, Pacho's Bail Bonds, Elizabeth MacPherson, Tri-State Bail Bonds and David R. Morgan:

## Introduction

1.      This is an action based on Defendants' violations of Bail Bond Subagency and Limited Agency Agreements by failing to remit payment of all current and future agent service charges and premiums on bail bonds issued in civil and criminal actions, and unaccounted for, lost or mislaid powers of attorney, by Defendants as subagents of Plaintiff Capital Bonding Corporation, which had been designated by Plaintiff Harco National Insurance Company as its supervising agent to appoint and supervise subagents such as Defendants to solicit and write such bail bonds.

## Parties

2.      Plaintiff Harco National Insurance Company ("Harco") is a corporation organized under the laws of the State of Illinois and has a principal place of business in Rolling Meadows, Illinois.

2

3.     Plaintiff Capital Bonding Corporation ("CBC") is a corporation organized under the laws of the Commonwealth of Pennsylvania and has a principal place of business in Reading, Pennsylvania.

4.     Plaintiff Surety Administrators, Inc. ("SA") is a corporation organized under the laws of the Commonwealth of Pennsylvania and has a principal place of business in Reading, Pennsylvania.

5.     Defendant Southeast Bail Bonds, LLC ("Southeast") is, upon information and belief, a limited liability corporation having a principal place of business in Perth Amboy, New Jersey.

6.     Defendant Montgomery R. Carlin ("Carlin") is an adult individual who resides in Ghent, New York, and is a Member of Southeast and general counsel of Tri-State Bail Bonds. Upon information and belief, Carlin is also an owner of Tri-State Bail Bonds and Pacho's Bail Bonds.

7.     Defendant R. Scott Hall ("Hall') is an adult individual who resides in Dalton, Georgia, and is a Member of Southeast.

8.     Defendant David E. Smith is an adult individual who resides in Dalton, Georgia, and is a Member of Southeast.

9.     Defendant Vincent J. Smith is an adult individual who resides in Reading, Pennsylvania, and is an owner of Southeast and Pacho's Bail Bonds.

10.    Defendant Pacho's Bail Bonds ("Pacho's") is, upon information and belief, a limited liability corporation having a principal place of business in Van Nuys, California.

11.    Defendant Elizabeth MacPherson ("MacPherson") is an adult individual who resides in California, and is the President of Pacho's.

12.    Defendant Tri-State Bail Bonds ("Tri-State") is, upon information and belief, a limited liability corporation having a principal place of business in Passaic, New Jersey.

13.    Defendant David Morgan ("Morgan') is an adult individual who resides in Passaic, New Jersey, and is the President of Tri-State.

### Jurisdiction and Venue

14.    The amount in controversy in this matter exceeds $75,000.

15.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

16.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims occurred in this district.

### Factual Allegations

17.    Harco is a duly licensed casualty insurance company that, at all times relevant hereto, was engaged, *inter alia*, in the business of serving as surety on bail and immigration bonds.

18.    CBC is a company that, at all times relevant hereto, had been designated by Harco to become a surety agent on bail bonds in civil and criminal actions and to appoint and supervise subagents in, *inter alia*, designated areas in the United States.

19.    SA is a company that, on behalf of Harco, has obtained the rights to collect certain debt to CBC by sub-agents such as Defendants who had become executing agents of CBC and Harco for the writing of bail bonds, which debt is now owed to Harco pursuant to certain security interest agreements between Harco and CBC.

20.    On January 1, 2003, Harco entered into a Program Administrator Agreement ("PAA") with CBC regarding a bail bond and immigration bond program administered by CBC.

21.    Pursuant to the PAA, CBC was responsible for the marketing, underwriting and issuance of bail and immigration bonds for Harco in numerous states across the country.  CBC

4

was responsible for, *inter alia*, soliciting applications for federal and state criminal court bail bonds and Immigration and Naturalization Services surety bonds. CBC's duties under the PAA included, *inter alia*, charging and collecting agent service charges and premium payments for such bonds and remitting those premiums to Harco. CBC was also responsible under the PAA for, *inter alia*, record maintenance, risk mitigation and claims management. In addition, pursuant to the PAA, the selection and practices of any CBC sub-agents with respect to the PAA were subject to Harco's approval.

### The Tri-State Agreement

22.     On October 20, 1998, CBC entered into a Bail Bond Subagency Agreement with Morgan trading as Tri-State (the "Tri-State Agreement).

23.     Pursuant to the Tri-State Agreement, CBC appointed Morgan trading as Tri-State as a nonexclusive subagent to Harco designated by CBC in and for the soliciting and writing of retail joint venture bail bonds in those counties specified in the Tri-State Agreement.

### The Pacho's Agreement

24.     On July 20, 2001, CBC entered into a Bail Bond Subagency Agreement with Pacho's (the "Pacho's Agreement").

25.     Pacho's also entered into a similar Bail Bond Subagency Agreement with Aegis Security Insurance Group, another casualty insurance company that is engaged, *inter alia*, in the business of serving as surety on bail and immigration bonds.

26.     Pursuant to the Pacho's Agreement, CBC appointed McPherson trading as Pacho's as a nonexclusive subagent to Harco designated by CBC in and for the soliciting and writing of retail joint venture bail bonds in those counties specified in the Pacho's Agreement.

**The Southeast Operating Agreement**

27.    On October 24, 2001, Carlin, Hall and Vincent J. Smith entered into an Operating Agreement for Southeast Bail Bonds, LLC, forming Southeast pursuant to the Pennsylvania Limited Liability Company Law of 1994, 15 Pa. C.S.A. §§8901-8978, and defining Carlin, Hall and Vincent J. Smith as "Members" ("Southeast Operating Agreement").

28.    Carlin, Hall and Vincent J. Smith formed Southeast to serve as a holding company for the acquisition and operation of retail bail bond franchises with CBC in various metropolitan areas in the southeastern United States.

29.    On October 24, 2001, Southeast entered into a Bail Bond Subagency Agreement (Joint Venture) with CBC and Bail Bond Franchisors, Inc. ("BBF"), a duly licensed surety bond agency in the Commonwealth of Pennsylvania in which Vincent J. Smith was a majority shareholder ("Southeast Subagency Agreement").

30.    The Southeast Subagency Agreement expressly acknowledged that Southeast was a franchisee of CBC, and Southeast became an executing agent for the writing of bail bonds.

31.    Pursuant to the Southeast Subagency Agreement, Southeast was appointed a nonexclusive subagent to a bail surety insurance carrier in and for the soliciting and writing of retail joint venture bail bonds in those counties specified in the Southeast Subagency Agreement.

32.    Harco entered into a Limited Agency Agreement with David E. Smith that was effective January 1, 2003, as David E. Smith desired to participate in the bail bond program pursuant to the PAA between Harco and CBC ("David E. Smith Agreement").

33.    Pursuant to the David E. Smith Agreement, Harco appointed David E. Smith as a nonexclusive subagent to Harco designated by CBC in and for the soliciting and writing of retail joint venture bail bonds in those counties specified in the David E. Smith Agreement.

34.     Pursuant to the David E. Smith Agreement, David E. Smith agreed to, *inter alia*, solicit applications for bail; to receive proposals for the bail bonds; to forward such applications and proposals to CBC; to hold and issue Powers of Attorney, corporate seals and other documents on behalf of Harco; to issue bonds only as approved by CBC; to receive requests for changes, transfers, and modifications of existing bonds in accordance with underlying contracts and forward such requests to CBC; to obtain collateral for bail bonds and forward all collateral to CBC; and to collect agent service charges and premium for all bail bonds issued through CBC with respect to business solicited by David E. Smith.

## The Bail Bonds Subagency Agreements

35.     Pursuant to each Agreement, each Defendant agreed to, *inter alia*, solicit and write bail bond business; collect and promptly transmit to CBC all agent service charges and premiums and collateral according to such routines prescribed by Harco and CBC; and assure that persons bonded appear in Court when required.

36.     Pursuant to the each Agreement, each Defendant is required to keep complete records, in such form as Harco and CBC may indicate, of all bond business written by each Defendant for Harco, and all such records must be available at all times to Harco and CBC.

37.     Pursuant to the each Agreement, and the insurance laws of Pennsylvania and New Jersey and California, all agent service charges and premiums collected by Defendants are deemed trust funds that shall not be commingled with other funds, and shall be turned over immediately to CBC for Harco according to such routine as Harco and CBC may prescribe.

38.     Pursuant to the each Agreement, directed by CBC and Harco, each Defendant was required to transmit to CBC in such form and according to such routine as Harco and CBC from time to time prescribed, reports on all bond business written by or through Defendants showing, *inter alia*, the principals' names and addresses, the same information regarding guarantors and

sureties, the risks assumed, agent service charges and premiums collected, collateral received, perfected and returned, forfeitures incurred, claims paid, bonds discharged and any and all other information that Harco and CBC may from time to time request.  Defendants were also required to promptly file as required with Harco and CBC copies of any documents executed by them on behalf of Harco.

39.    Pursuant to each Agreement, Harco regularly supplied each Defendant with a limited number of form documents which are referred to in the Agreements as "powers of attorney."  Each of these "powers of attorney" was endorsed for a certain maximum amount, and each Defendant was authorized to issue and post these documents as needed for purposes of writing bail bonds.  Under each Agreement, should any power of attorney be unaccounted for, lost or mislaid, such power of attorney is considered issued and posted for the maximum amount endorsed thereon; Defendants must immediately report to CBC and Harco a list of such powers of attorney and pay therewith the full agent service charges and premiums and reserve (less applicable commission) which would be due if such power of attorney had actually been issued or posted for the maximum account endorsed thereon.

40.    Pursuant to each Agreement, Defendants were to pay CBC's fees, which were to be calculated retroactively for each month so long as Defendants wrote bonds for Harco or through CBC, in the specified amount of the penal liability with respect to any bond written by or through Defendants as stated in the Agreements.  Further, such fees were due and payable weekly along with reports required pursuant to the Agreements.

**Defendants' Violations and Notices of Default to Defendants**

41.    On August 6, 2004, Harco wrote Pacho's and MacPherson to advise them that SA had obtained the rights to their debt to CBC and demanding remittance of all current and future payments on their account.  The balance of the agent service charges and premium then due and

owing was $249,616.13, and the unaccounted for powers of attorney with agent service charges and premium due and owing was $1,201,400.00.

42.    The August 6, 2004 correspondence from Harco to Pacho's and MacPherson enclosed another August 6, 2004 letter from the Acting President of CBC demanding immediate remittance of all current and future payments on their account.

43.    In direct violation of the Agreements, Pacho's and MacPherson failed to remit all payments due and owing on their account to CBC and Harco.

44.    On August 24, 2004, Harco wrote Southeast, Carlin and Hall to advise them that SA had obtained the rights to their debt to CBC and demanding remittance of all current and future payments on their account.  The balance of the agent service charges and premium then due and owing was $365,287.70, and the unaccounted for powers of attorney with agent service charges and premium due and owing was $822,000.00.

45.    The August 24, 2004 correspondence from Harco to Southeast, Carlin and Hall enclosed another August 24, 2004 letter from the Acting President of CBC demanding immediate remittance of all current and future payments on their account.

46.    In direct violation of the Southeast Agreement, Southeast, Carlin and Hall failed to remit all payments due and owing on their account to CBC and Harco.

47.    On September 8, 2004, Harco wrote Tri-State and Morgan to advise them that SA had obtained the rights to their debt to CBC and demanding remittance of all current and future payments on their account.  The balance of the agent service charges and premium then due and owing was $396,738.82, and the unaccounted for powers of attorney with agent service charges and premium due and owing was $1,011,600.00.

48.     The September 8, 2004 correspondence from Harco to Tri-State and Morgan enclosed another September 8, 2004 letter from the Acting President of CBC demanding immediate remittance of all current and future payments on their account.

49.     In direct violation of the Tri-State Agreement, Tri-State and Morgan failed to remit all payments due and owing on their account to CBC and Harco.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### (Plaintiffs v. Tri-State, Morgan and Carlin)

50.     Plaintiffs reassert the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51.     Defendants' conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Tri-State Agreement.  Defendants breached the Tri-State Agreement in the following ways:

      a.     intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

      b.     intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Tri-State Agreement; and

      c.     by such other ways as may be proved by the evidence.

52.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs have been damaged in an amount not less than $396,738.82.

## SECOND CLAIM FOR RELIEF
### Breach of Contract
### (Plaintiffs v. Tri-State, Morgan and Carlin)

53.     Plaintiffs reassert the allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants' conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Tri-State Agreement.  Defendants breached the Tri-State Agreement in the following ways:

      a.     intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

      b.     intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Tri-State Agreement; and

      c.     by such other ways as may be proved by the evidence.

55.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs have been damaged in an amount not less than $1,011,600.00.

**THIRD CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(Plaintiffs v. Tri-State, Morgan and Carlin)**

56.     Plaintiffs reassert the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57.     Pursuant to the Tri-State Agreement, Defendants were fiduciaries of Harco and CBC.

58.     Pursuant to the Tri-State Agreement, Defendants owed duties of good faith, loyalty and due care to Harco and CBC.

59.     Each of Defendants' fiduciary duties imposed a concurrent obligation to take reasonable steps to preserve Harco's and CBC's assets and to promote their financial security.

60.     Defendants breached their fiduciary duties to Harco and CBC by, *inter alia*:

      a.     intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

b.        intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Tri-State Agreement;

c.        intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

d.        intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Tri-State Agreement; and

e.        by such other ways as may be proved by the evidence.

61.     Defendants' breaches of fiduciary duties constitute constructive fraud.

62.     As a result of their breaches of fiduciary duties, Defendants have been unjustly enriched.

63.     As a direct and proximate result of Defendants' breaches of fiduciary duties, Plaintiffs have been damaged in an amount not less than $1,408,338.82.

**FOURTH CLAIM FOR RELIEF**
**Conversion of Trust Funds**
**(Plaintiffs v. Tri-State, Morgan and Carlin)**

64.     Plaintiffs reassert the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65.     Pursuant to the Tri-State Agreement, and the insurance laws of Pennsylvania and New Jersey, all agent service charges and premiums collected by Defendants are deemed trust funds which are the property of Harco, not to be commingled with other funds, but to be turned over immediately to CBC for Harco.

66.     Defendants deprived Harco and CBC of their respective property rights in these trust funds, and deprived Harco and CBC of their rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Tri-State Agreement and state law.

67.     Defendants unreasonably interfered with Harco's and CBC's respective property rights in these trust funds, and unreasonably interfered with Harco's and CBC's respective rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Tri-State Agreement and state law.

68.     Neither Harco nor CBC consented to the Defendants' failure to turn over the trust funds.

69.     Defendants have no lawful justification for their failure to turn over the trust funds.

70.     As a direct and proximate result of Defendants' wrongful conversion by failure to turn over the trust funds, Plaintiffs have been damaged in an amount not less than $1,408,338.82.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Plaintiffs v. Tri-State, Morgan and Carlin)**

71.     Plaintiffs reassert the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.     Harco conferred a benefit on all Defendants in the form of its funds which were to be held in trust by Defendants and turned over to CBC for Harco.

73.     Defendants appreciated the benefit by using these funds for various purposes that did not include turning the funds over to CBC for Harco as agreed and as mandated by law, and inequitably retained the benefit without repayment to Plaintiffs.

74.     Defendants improperly and unjustly enriched themselves in excess of $1,408,338.82 based upon Defendants' wrongful conversion of agent service charges and premiums which were to be held in trust for Harco and CBC under the Tri-State Agreement and according to law.

75.     As a direct and proximate result of Defendants' unjustly enriching themselves by failing to turn over Harco's and CBC's agent service charges and premiums, Plaintiffs have been damaged in an amount not less than $1,408,338.82.

## SIXTH CLAIM FOR RELIEF
### Breach of Contract
### (Plaintiffs v. Pacho's, MacPherson, Vincent J. Smith and Carlin)

76.     Plaintiffs reassert the allegations contained in paragraphs 1 through 75 as if fully set forth herein.

77.     Defendants' conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Pacho's Agreement.  Defendants breached the Pacho's Agreement in the following ways:

          a.     intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

          b.     intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Pacho's Agreement; and

          c.     by such other ways as may be proved by the evidence.

78.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs have been damaged in an amount not less than $249,616.13.

## SEVENTH CLAIM FOR RELIEF
### Breach of Contract
### (Plaintiffs v. Pacho's, MacPherson, Vincent J. Smith and Carlin)

79.     Plaintiffs reassert the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

80.     Defendants' conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Pacho's Agreement.  Defendants breached the Pacho's Agreement in the following ways:

       a.      intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

       b.      intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Pacho's Agreement; and

       c.      by such other ways as may be proved by the evidence.

81.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs have been damaged in an amount not less than $1,201,400.00.

## EIGHTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Plaintiffs v. Pacho's, MacPherson, Vincent J. Smith and Carlin)

82.     Plaintiffs reassert the allegations contained in paragraphs 1 through 81 as if fully set forth herein.

83.     Pursuant to the Pacho's Agreement, Defendants were fiduciaries of Harco and CBC.

84.     Pursuant to the Pacho's Agreement, Defendants owed duties of good faith, loyalty and due care to Harco and CBC.

85.     Each of Defendants' fiduciary duties imposed a concurrent obligation to take reasonable steps to preserve Harco's and CBC's assets and to promote their financial security.

86.     Defendants breached their fiduciary duties to Harco and CBC by, *inter alia*:

       a.      intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

       b.      intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Pacho's Agreement;

       c.      intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

d.    intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Pacho's Agreement; and

e.    by such other ways as may be proved by the evidence.

87.    Defendants' breaches of fiduciary duties constitute constructive fraud.

88.    As a result of their breaches of fiduciary duties, Defendants have been unjustly enriched.

89.    As a direct and proximate result of Defendants' breaches of fiduciary duties, Plaintiffs have been damaged in an amount not less than $1,451,016.13.

## NINTH CLAIM FOR RELIEF
### Conversion of Trust Funds
**(Plaintiffs v. Pacho's, MacPherson, Vincent J. Smith and Carlin)**

90.    Plaintiffs reassert the allegations contained in paragraphs 1 through 89 as if fully set forth herein.

91.    Pursuant to the Pacho's Agreement, and the insurance laws of Pennsylvania, all agent service charges and premiums collected by Defendants are deemed trust funds which are the property of Harco, not to be commingled with other funds, but to be turned over immediately to CBC for Harco.

92.    Defendants deprived Harco and CBC of their respective property rights in these trust funds, and deprived Harco and CBC of their rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Pacho's Agreement and state law.

93.    Defendants unreasonably interfered with Harco's and CBC's  respective property rights in these trust funds, and unreasonably interfered with Harco's and CBC's  respective rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Pacho's Agreement and state law.

94.    Neither Harco nor CBC consented to the Defendants' failure to turn over the trust funds.

95.    Defendants have no lawful justification for their failure to turn over the trust funds.

96.    As a direct and proximate result of Defendants' wrongful conversion by failure to turn over the trust funds, Plaintiffs have been damaged in an amount not less than $1,451,016.13.

## TENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Plaintiffs v. Pacho's, MacPherson, Vincent J. Smith and Carlin)

97.    Plaintiffs reassert the allegations contained in paragraphs 1 through 96 as if fully set forth herein.

98.    Harco conferred a benefit on all Defendants in the form of its funds which were to be held in trust by Defendants and turned over to CBC for Harco.

99.    Defendants appreciated the benefit by using these funds for various purposes that did not include turning the funds over to CBC for Harco as agreed and as mandated by law, and inequitably retained the benefit without repayment to Plaintiffs.

100.   Defendants improperly and unjustly enriched themselves in excess of $249,616.13 based upon Defendants' wrongful conversion of agent service charges and premiums which were to be held in trust for Harco and CBC under the Pacho's Agreement and according to law.

101.   As a direct and proximate result of Defendants' unjustly enriching themselves by failing to turn over Harco's and CBC's agent service charges and premiums, Plaintiffs have been damaged in an amount not less than $1,451.016.13.

## ELEVENTH CLAIM FOR RELIEF
**Breach of Contract**
**(Plaintiffs v. Southeast, Carlin, Hall, David E. Smith and Vincent J. Smith)**

102.    Plaintiffs reassert the allegations contained in paragraphs 1 through 101 as if fully set forth herein.

103.    Defendants' conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Southeast Subagency Agreement. Defendants breached the Southeast Subagency Agreement in the following ways:

        a.    intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

        b.    intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Southeast Subagency Agreement; and

        c.    by such other ways as may be proved by the evidence.

104.    As a direct and proximate result of Defendants' breach of contract, Plaintiffs have been damaged in an amount not less than $365,287.70.

## TWELTH CLAIM FOR RELIEF
**Breach of Contract**
**(Plaintiffs v. Southeast, Carlin, Hall, David E. Smith and Vincent J. Smith)**

105.    Plaintiffs reassert the allegations contained in paragraphs 1 through 104 as if fully set forth herein.

106.    Defendants' conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Southeast Subagency Agreement. Defendants breached the Southeast Subagency Agreement in the following ways:

        a.    intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

b.    intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Southeast Subagency Agreement; and

c.    by such other ways as may be proved by the evidence.

107.    As a direct and proximate result of Defendants' breach of contract, Plaintiffs have been damaged in an amount not less than $822,000.00.

**THIRTEENTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(Plaintiffs v. Southeast, Carlin, Hall, David E. Smith and Vincent J. Smith)**

108.    Plaintiffs reassert the allegations contained in paragraphs 1 through 107 as if fully set forth herein.

109.    Pursuant to the Southeast Agreement, Defendants were fiduciaries of Harco and CBC.

110.    Pursuant to the Southeast Subagency Agreement, Defendants owed duties of good faith, loyalty and due care to Harco and CBC.

111.    Each of Defendants' fiduciary duties imposed a concurrent obligation to take reasonable steps to preserve Harco's and CBC's assets and to promote their financial security.

112.    Defendants breached their fiduciary duties to Harco and CBC by, *inter alia*:

a.    intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

b.    intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Southeast Subagency Agreement;

c.    intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

d.    intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Southeast Subagency Agreement; and

e.    by such other ways as may be proved by the evidence.

113.    Defendants' breaches of fiduciary duties constitute constructive fraud.

114.    As a result of their breaches of fiduciary duties, Defendants have been unjustly enriched.

115.    As a direct and proximate result of Defendants' breaches of fiduciary duties, Plaintiffs have been damaged in an amount not less than $1,187,287.70.

### FOURTEENTH CLAIM FOR RELIEF
**Conversion of Trust Funds**
**(Plaintiffs v. Southeast, Carlin, Hall, David E. Smith and Vincent J. Smith)**

116.    Plaintiffs reassert the allegations contained in paragraphs 1 through 115 as if fully set forth herein.

117.    Pursuant to the Southeast Subagency Agreement, and the insurance laws of Pennsylvania and New Jersey, all agent service charges and premiums collected by Defendants are deemed trust funds which are the property of Harco, not to be commingled with other funds, but to be turned over immediately to CBC for Harco.

118.    Defendants deprived Harco and CBC of their respective property rights in these trust funds, and deprived Harco and CBC of their rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Southeast Agreement and state law.

119.    Defendants unreasonably interfered with Harco's and CBC's  respective property rights in these trust funds, and unreasonably interfered with Harco's and CBC's  respective rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Southeast Subagency Agreement and state law.

120.    Neither Harco nor CBC consented to the Defendants' failure to turn over the trust funds.

121.    Defendants have no lawful justification for their failure to turn over the trust funds.

122.    As a direct and proximate result of Defendants' wrongful conversion by failure to turn over the trust funds, Plaintiffs have been damaged in an amount not less than $365,287.70.

**FIFTEENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Plaintiffs v. Southeast, Carlin, Hall, David E. Smith and Vincent J. Smith)**

123.    Plaintiffs reassert the allegations contained in paragraphs 1 through 122 as if fully set forth herein.

124.    Harco conferred a benefit on all Defendants in the form of its funds which were to be held in trust by Defendants and turned over to CBC for Harco.

125.    Defendants appreciated the benefit by using these funds for various purposes that did not include turning the funds over to CBC for Harco as agreed and as mandated by law, and inequitably retained the benefit without repayment to Plaintiffs.

126.    Defendants improperly and unjustly enriched themselves in excess of $365,287.70 based upon Defendants' wrongful conversion of agent service charges and premiums which were to be held in trust for Harco and CBC under the Southeast Subagency Agreement and according to law.

127.    As a direct and proximate result of Defendants' unjustly enriching themselves by failing to turn over Harco's and CBC's agent service charges and premiums, Plaintiffs have been damaged in an amount not less than $365,287.70.

WHEREFORE, Plaintiffs respectfully pray the Court as follows:

a.    That Plaintiffs have and recover compensatory damages from Defendants, jointly and severally, in an amount greater than $75,000;

b.    That Plaintiffs have and recover punitive damages, jointly and severally, from Defendants;

c.    That the Court enter an Order commanding Defendants, and all those acting in concert with them, to immediately turn over to Plaintiffs all blank bond inventory forms and powers of attorney;

d.    That Plaintiffs have and recover reasonable attorneys' fees;

e.    That the costs of this action be taxed to Defendants; and

f.    For such other and further relief as the Court may deem just and proper.


                                    Respectfully submitted,


OF COUNSEL:                         /s/ Henry F. Siedzikowski
                                    HENRY F. SIEDZIKOWSKI
ELLIOTT, GREENLEAF                  ERIC J. BRONSTEIN
  & SIEDZIKOWSKI, P.C.              TODD N. BARNES
                                    Union Meeting Corporate Center V
                                    925 Harvest Drive
                                    Blue Bell, PA  19422
                                    (215) 977-1000

                                    Counsel for Plaintiffs


DATED: November 5, 2004